IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ADRIENNE DENISE FAISON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 1:22-cv-72-JTA |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | (WO) |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pursuant to 42 U.S.C. § 405(g), the claimant, Adrienne Denise Faison ("Faison"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Faison's application for a period of disability and Supplemental Security Income ("SSI"). The Court construes Faison's brief in support of her Complaint (Doc. No. 15) as a motion for summary judgment and the Commissioner's brief in opposition to the Complaint as a motion for summary judgment (Doc. No. 16). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).

After careful scrutiny of the record and the motions submitted by the parties, the Court finds that Faison's motion for summary judgment is due to be DENIED, the

---

[1] Document numbers as they appear on the docket sheet are designated as "Doc. No."

Commissioner's motion for summary judgment is due to be GRANTED, and the decision of the Commissioner is due to be AFFIRMED.

## I.   PROCEDURAL HISTORY AND FACTS

Faison was 36 years old at the time of the administrative hearing held on September 15, 2021. (R. 28, 41.)[2] She has at least a high school education and previously worked as a dancer. (R. 28.) She alleged a disability onset date of January 17, 2014, due to depression, anxiety and schizophrenia. (R. 26, 225, 249.)

On April 21, 2020, Faison protectively filed an application for SSI under Title XVI (42 U.S.C. §§ 1389, *et seq*.). (R. 224-230.) This application was denied and Faison requested an administrative hearing. (R. 209.) The hearing was held before an Administrative Law Judge ("ALJ") on September 15, 2021. (R. 36-58.) At the hearing, Faison amended the alleged disability onset date to April 21, 2020, the protective filing date. (R. 21, 40.) The ALJ returned an unfavorable decision on September 27, 2021. (R. 18-35.) Faison sought review by the Appeals Council, and it denied her request. (R. 1-6.) Thus, the hearing decision became the final decision of the Commissioner.[3]

On February 9, 2022, Faison filed the instant action seeking review of the Commissioner's final decision. (Doc. No. 1.) The parties have briefed their respective positions. (Docs. No. 15, 16.) This matter is ripe for review.

---

[2] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case. (*See* Doc. No. 17.)

[3] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

## II.    STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)). Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence. *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner. *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210.

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial

3

evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

###     III.     STANDARD FOR DETERMINING DISABILITY

An individual who files an application for SSI must prove that she is disabled.  *See* 20 C.F.R. § 416.912(a).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).

Disability under the Act is determined by a five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a).  The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(i).  "Substantial gainful activity" is work activity that involves significant physical or mental activities.  20 C.F.R. § 416.972(a).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. § 416.920(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities.  20 C.F.R. § 416.920(c).  Absent such impairment, the claimant may not claim disability.  (*Id*.)  Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. §§ 416.920(d),

416.925, and 416.926.  If such criteria are met, then the claimant is declared disabled.  20 C.F.R. § 416.920(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis.  At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 416.920(e).  The ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 416.920(f).  If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled.  20 C.F.R. § 416.960(b)(3).  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 416.920(g)(1).  In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience.  20 C.F.R. § 416.960(c).  Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. §§ 416.920(g), 416.960(c).

In cases such as this one where the claimant filed an application for benefits after March 17, 2017, the ALJ evaluates medical opinions according to (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) the provider's specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. § 416.920c(c)(1-5).

## IV.    ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process,  the ALJ found that Faison

has not engaged in substantial gainful activity since the amended onset date of disability,

and that she suffers from the following severe impairments that significantly limit her

ability to perform basic work activities: depression, anxiety, back and hip disorder and

obesity. (R. 23.) The ALJ also found that Faison's sleep apnea, restless leg syndrome and

excessive sleepiness were not severe impairments.  (*Id*.)

The ALJ concluded that Faison's impairments do not meet or medically equal the

severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.

24.) The ALJ explained that the record did not show that Faison satisfied the criteria for

any impairment under Listings 1.15, 1.16 or 1.18 in relation to her back and hip disorders.

(R. 24.) The ALJ addressed Faison's obesity, finding that "obesity is not a listed

impairment and [her] weight does not result in the marked functional limitations that would

suggest medical equivalence to any listed impairment."  (R. 24.)

The ALJ also considered Faison's mental impairments and concluded that her

impairments did not meet or medically equal the criteria of Listings 12.04 and 12.06. (R.

24.) The ALJ found that Faison's mental impairments did not cause at least two marked

limitations or one extreme limitation, thus the paragraph "B" criteria are not satisfied, and

found that the record failed to establish the presence of the paragraph "C" criteria.  (R. 24-

25.) The ALJ stated, "Specifically, there is no evidence of medical treatment, mental health

therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that

diminishes the symptoms and signs of [Faison's] mental disorder along with marginal

adjustment." (R. 25.) The ALJ asserted that the RFC "reflects the degree of limitation [he] has found in the "paragraph B" mental function analysis."  (R. 25.)

After consideration of the entire record, the ALJ determined that Faison retains the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b),[4] with the following limitations:

> … [She] can frequently climb ramps and stairs. She can occasionally climb ladders, ropes, and scaffolds. [She] can occasionally be exposed to unprotected heights and moving mechanical parts. [She] can perform simple and routine tasks and some detailed instructions consistent with reasoning level one through three occupations. She can interact with supervisors, coworkers, and the public occasionally but would do best working with things and data instead of people. [She] can deal with the occasional changes in a routine work setting.

(R. 25.) In assigning this RFC, the ALJ found Faison's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. 26.)

In support of the RFC finding, the ALJ thoroughly summarized the medical records. The ALJ noted that Faison alleged disability to schizophrenia, yet there was no evidence showing that she had been diagnosed with schizophrenia during the adjudication period. (R. 26.) The ALJ mentioned that Faison did not specifically allege that she was disabled

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

due to any physical impairments and, although she suffered physical injuries after a motor vehicle accident in 2011, she has not received any treatment "for any ongoing hip or back problems since the amended alleged onset date." (R. 26.) Nonetheless, the ALJ limited Faison to "light work that involves no more than occasionally climbing ladders, ropes and scaffolds, working at unprotected heights and around moving mechanical parts and frequently climbing ramps and stairs to account for [Faison's] back and hip disorders as well as her weight." (R. 26.)

The ALJ also explained that he "further limited [Faison] to unskilled work with minimal social contacts and few workplace changes as set forth in the [RFC] to account for her depression and anxiety." (R. 26.) The ALJ noted that his RFC finding "is supported by [Faison's] treatment records and treatment history, [her] activities of daily living and generally, the consultative evaluation findings and the opinion of Dr. [Jennifer] Fulmer." (R. 26.) The ALJ detailed Faison's mental health treatment at the Alabama Clinics, beginning in April 2020, when she complained of mood swings, depression, insomnia, paranoia and auditory hallucinations.  (R. 26.) The ALJ noted that Faison was not taking any medication at that time and that she was diagnosed with major depressive disorder with psychotic features, generalized anxiety disorder, and insomnia; and was prescribed psychotropic medication. (R. 26.) The ALJ also noted that Faison has received routine medication management services at Alabama Clinics for over a year, "has had many normal mental status exams or only minimally abnormal exams[,]" and "has complained of hallucinations at times." (R. 26.) The ALJ further noted that, in August 2021, Faison "presented as depressed and sad and reported auditory hallucinations but her objective

mental status exam was otherwise unremarkable." (R. 27.) The ALJ concluded that Faison's "treating provider has occasionally adjusted [her] oral medication; however, she is overall stable on prescribed medication and has not required inpatient psychiatric treatment and has not participated in any counseling." (R. 26-27.)

The ALJ considered the August 2021 opinion of Dr. Shakir R. Meghani, Faison's treating psychiatrist, and did not find it to be persuasive. (R. 27.) The ALJ also considered and discussed four consultative evaluations of other medical sources: a July 2020 evaluation, a February 2021 evaluation, and a July 27, 2020 evaluation – all three related to Faison's current SSI application – and a 2012 evaluation that related to Faison's prior disability application. (R. 27-28.) Finally, the ALJ considered and discussed a Mental Residual Functional Capacity Assessment completed by Dr. Fulmer in February 2021. (R. 28, 111-114.) The ALJ found Dr. Fulmer's opinion that Faison is able to perform mental work-related activities consistent with mild to moderate limitations "somewhat persuasive." (R. 28.) The ALJ elucidated,

> Dr. Fulmer opined that [Faison] is able to understand, remember and carry out short and simple instructions/tasks but not those more detailed or complex. Dr. Fulmer did not opine that the claimant is precluded from performing all detailed work, only "more detailed" work. Dr. Fulmer's opinion is generally consistent with the evidence of record and [Faison's] positive response to treatment. Moreover, Dr. Fulmer is familiar with the Social Security disability program.

(R. 28.)

Based upon the testimony of a vocational expert ("VE"), the ALJ determined that Faison was precluded from performing any past relevant work. (R. 28.) The ALJ also found that based upon Faison's age, education, work experience and RFC, there are jobs that exist

in "significant numbers in the national economy" that she can perform, and therefore she was not disabled as defined by the Act. (R. 28-29.) The ALJ determined that Faison could work as a hand packager, small products assembler, or a finial assembler. (R. 29.) The ALJ concluded that Faison had not been under a disability from the alleged amended disability onset date through the date of the ALJ's decision. (R. 29-30.)

## V.   DISCUSSION

On appeal, Faison argues the ALJ's treatment of the medical opinion of Dr. Meghani is not supported by substantial evidence.[5]   (Doc. No. 15.) Faison contends the ALJ's characterization of Dr. Meghani's opinion is not consistent with the evidence because mental status examination notes from Alabama Clinics (1) cite the presence of auditory hallucinations and paranoia, sadness and depressed mood; (2) strongly indicate that her symptoms returned or remained after initial improvement; and (3) reflect regular alterations to medications which suggest that Dr. Meghani was still attempting to provide adequate medication management for her symptoms. (*Id*. at 11.) Faison also criticizes the ALJ's consideration of the absence of counseling or inpatient psychiatric treatment in the medical record and the ALJ's evaluation of her activities of daily living. (*Id*. at 11-12.) These contentions are meritless.

The ALJ considers medical opinions from acceptable medical sources, which include licensed physicians and licensed psychologists. 20 C.F.R. § 404.1502(a). The regulations define a medical opinion as

---

[5] Faison does not challenge the credibility finding of the ALJ.

… a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [the claimant] [has] one or more impairment-related limitations or restrictions in the following abilities:

(i) [Her] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) [Her] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) [Her] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) [Her] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). The regulations direct the ALJ to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

When a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors [the ALJ] considers when … evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)….

20 C.F.R. § 404.1520c(a).

The regulations direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization of the medical source, and (5) other factors. 20 C.F.R. §

404.1520c(1)(c).  The ALJ must explain in his decision how he considered the factors of supportability[6] and consistency[7] in his determination of overall persuasiveness of each source. 20 C.F.R. § 404.1520c(b)(2) ("[S]upportability ... and consistency ... are [t]he most important factors we consider when we determine how persuasive we find a medical source's opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision."). "When weighing medical opinion evidence, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is well-supported, and whether an opinion is consistent with the record." *Wines v. Acting Comm'r of Soc. Sec.,* No. 21-13606, 2022 WL 2526586, at *3 (11th Cir. July 7, 2022).

The persuasiveness analysis should turn on whether "the medical source's opinion is (1) supported by the source's own records and (2) consistent with other evidence of record." *Podeszwa v. Kijakazi,* No. 3:21-CV-223-JTA, 2022 WL 4357434, at *7 (M.D. Ala. Sept. 20, 2022) (citation and internal quotation marks omitted). The ALJ is not required to explain how he considered the remaining factors unless he finds two or more medical opinions are equally well-supported and consistent with the record but are not

---

[6] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

[7] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

exactly the same. *Gogel v. Comm'r Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6 (M.D. Fla. Sept. 20, 2021).

On August 2, 2021, Dr. Meghani completed an assessment of Faison's psychiatric or psychological impairments. (R. 418-420.) Dr. Meghani opined that Faison's impairments were "marked" – i.e., "an impairment which seriously affects ability to function" – in all areas of mental activity, including ability to interact appropriately with the general public, ability to ask simple questions or request assistance, ability to get along with co-workers or peers, deterioration in personal habits, ability to maintain attention and concentration for extended periods, ability to sustain a routine without special supervision, ability to make simple work-related decisions, ability to respond appropriately to supervision, ability to respond appropriately in changes to work settings, ability to respond to customary work pressures, and ability to be aware of normal hazards and take appropriate precautions. (R. 418-420.) Dr. Meghani also opined that Faison's impairments were marked in her ability to understand, remember and carry out simple instructions; ability to understand, remember and carry out complex instructions; ability to understand, remember and carry out repetitive tasks; ability to perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 418-419.) In the comments section of the assessment, Dr. Meghani noted: major depression with psychosis, history of motor vehicle accident, lower back pain and headaches. (R. 420.)

13

Although the ALJ found that Faison's impairments substantially limited her ability to perform basic work activities, the ALJ found unpersuasive Dr. Meghani's opinion that Faison's mental impairments were marked in every activity. (R. 27.) The ALJ cogently explained:

> Dr. Meghani, [Faison's] treating psychiatrist, opined in August 2021 that [Faison's] ability to perform all mental work related activities is markedly impaired (Exhibit B11F). This includes, for example, [Faison's] ability to ask simple questions or request assistance and to be aware of normal hazards and take appropriate precautions. The undersigned does not find the opinion of Dr. Meghani persuasive, as it is not supported by his own treatment records documenting many essentially normal mental status exams or the record as a whole. [Faison] has responded positively to treatment. She is not participating in counseling and she has not required inpatient psychiatric treatment. [Faison] lives with family, she is able to care for her children, shop, handle money, use a computer and cell phone, drive, and braid hair for money, all of which supports the residual functional capacity.

(R. 27.)

The ALJ articulated sufficient reasons for discounting Dr. Meghani's opinion of marked mental functional limitations. Dr. Meghani's own treatment notes from Faison's last visit on August 20, 2021, reflect that she was fully alert, had a fair attention span, was goal directed, made no suicidal statements, and had a good memory and fair impulse control. (R. 435.) Dr. Meghani's notes from Faison's prior visits reflect the same. (R. 437, 441, 443, 446, 448, 453, 455.) These normal findings support the ALJ's determination. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. 2022) (noting that normal findings support the ALJ's determination that the claimant was not disabled); *Tredik v. Comm'r of Soc. Sec. Admin.*, 826 F. App'x 840, 850 (11th Cir. 2020) (The ALJ may rely on "relatively innocent mental status examinations" in determining

disability.).  In addition, Dr. Meghani's notes indicate that Faison only received conservative medication management which does not suggest that she is disabled. *See Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 862 (11th Cir. 2017) (noting that "conservative and routine nature" of 15-minute medication management appointments "suggests that [the claimant's] impairments – while significant – were not so severe that she could not perform any job duties") (citation omitted); *Beegle v. Soc. Sec. Admin. Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (citing SSR 96–7p) ("[T]he ALJ may consider whether the level or frequency of treatment is consistent with the level of complaints."). Further, the medical record evidence from other medical sources supports the ALJ's finding of moderate mental functional limitations – not marked mental functional limitations as opined by Dr. Meghani.[8] Faison's own hearing testimony shows that she

---

[8] The ALJ explained that he found that Faison was moderately limited – i.e., an impairment which affects but does not preclude ability to function – in her mental abilities.  (R. 24-25.)  The ALJ stated:

> In understanding, remembering or applying information, [Faison] has a moderate limitation. In interacting with others, [Faison] has a moderate limitation. With regard to concentrating, persisting or maintaining pace, [Faison] has a moderate limitation. As for adapting or managing oneself, [Faison] has experienced a moderate limitation. This is supported, generally, by the State agency assessments, [her] treatment records and treatment history, the February 2021 consultative evaluation findings, and [her] activities of daily living. Dr. Fulmer, a State agency psychological consultant, found that [Faison] has mild to moderate limitations in the "paragraph B" criteria (Exhibit B6A). [Faison] has been seeing a psychiatrist since April 2020 for treatment of depression and anxiety. She is overall stable on prescribed medication. [Faison] has not participated in counseling and she has not required inpatient psychiatric treatment during the adjudication period. Dr. Jordan evaluated [Faison] on a consultative basis in February 2021 (Exhibit B10F). Dr. Jordan opined that [Faison's] ability to perform mental work related activities is at most mild to moderately limited. [Faison] malingered on a previous psychological consultative evaluation (Exhibit B8F). [Faison] lives with family. She cares for her children, she can shop and handle money, use a computer and cell phone, and drive (Exhibits B4E, B10F, hearing testimony). [Faison] has earned money braiding hair,

continued to engage in activities of daily living and the ALJ properly considered this testimony.[9] *See Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *3 (11th Cir. Apr. 5, 2022) ("The ALJ may consider daily activities at step four of the sequential evaluation process.") (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987)).

Here, substantial evidence supports the ALJ's finding that Dr. Meghani's opinion was inconsistent with the overall record and unpersuasive. "Under a substantial evidence standard of review, [Faison] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)). Faison failed to meet that burden.

Faison's arguments do not undermine the ALJ's reasons for rejecting Dr. Meghani's opinion. Rather, Faison's arguments are merely a difference of opinion as to the weight to be given to certain circumstances. The ALJ, however, is given the responsibility to assess those circumstances so Faison's different opinion must yield. *See Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 138–39 (11th Cir. 2019) ("If the Commissioner's

---

which requires interacting with others. Her providers noted that she exercises three times a week (Exhibit B12F).

(R. 24-25.) The medical evidence in the record supports this finding.

[9] Faison testified that she drove during the period at issue, makes her bed, shops, cooks, handles money, uses her cell phone and computer, uses social media, braids hair and folds laundry.  (R. 42, 48-50.)

decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.") (internal citations omitted). Accordingly, the Court finds no reversible error.

## VI.    CONCLUSION

After review of the administrative record, and considering all of the arguments, the Court finds the Commissioner's decision to deny Faison supplemental security income is supported by substantial evidence and is in accordance with applicable law. Hence, it is hereby

ORDERED as follows:

1.  The claimant's motion for summary judgment (Doc. No. 15) is DENIED.

2.  The Commissioner's motion for summary judgment (Doc. No. 16) is GRANTED.

3.  The decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

DONE this 4th day of August, 2023.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE